IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| BEATTIE B. ASHMORE, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR RONNIE GENE WILSON AND ATLANTIC BULLION AND COINS, INC., | ) ) ) ) ) ) | Civil Action No. 8:14-227- JMC |
| Plaintiffs, | ) ) | |
| vs. | ) ) | COMPLAINT |
| ALLIED ENERGY, INC., | ) ) | |
| Defendant. | ) ) | |

The Receiver, Beattie B. Ashm ore, (the "Receiver") hereby files this Co mplaint and alleges as follows:

1.      Plaintiff is the court ap pointed Receiver in <u>In Re Receiver</u>, 8:12-cv-2078-JMC and has been tasked by the Court with locating, managing, recouping, and distributing the assets of the Wilson-AB&C investment scheme associated with the criminal case <u>United States v. Wilson, et al</u>, 8:12-cr-320-JMC.

2.      The instant Com plaint is so related to the <u>In Re Receiver</u> case and the underlying criminal case, <u>United States v. W ilson, et al</u> that it form s part of the underlying case or controversy.

<u>JURISDICTION AND VENUE</u>

3.      This Court has jurisdiction and venue over Defendants and this action is proper pursuant to 28 U.S.C. §1332 because of the co mplete diversity of citizenship and 2 8 U.S.C. §1331 because of federal question jurisdiction.   Additionally, the Court has jurisd iction over

this action pursuant to 28 U.S.C. § 1367(a) as it seeks to accomplish the goals set forth in the action in which the Receiver was appointed.

4.      Venue is proper in the District of South Carolina pursuant to 28 U.S.C. § 1391 because Plaintiff resides in the District and a substantial part of the acts and/or admissions in reliance to these claims occurred in this District. Defendants have significant contacts with the District by virtue of doing business within the judicial district.

## BACKGROUND

5.      As a result of a criminal investigation into the fraudulent investment scheme orchestrated by Ronnie Gene Wilson ("Wilson") and Atlantic Bullion & Coin, Inc. ("AB&C") and the entry of a criminal information against Wilson and AB&C on April 11, 2012, an Order was entered, originally by text order on June 14, 2012 and as amended on July 25, 2012 and February 14, 2013 ("Court Order"), appointing Beattie B. Ashmore as the Receiver and setting forth the duties of the Receiver to include marshaling and safeguarding the assets of Wilson and AB&C and other so defined entities (hereinafter the "AB&C Receivership Entities")

6.      The Court Order, *inter alia*, includes the directive to bring suit for the disgorgement of profits, including specifically instituting legal proceedings against individuals who are in possession of monies that flow from the Ponzi scheme orchestrated by Wilson and AB&C. (See Court Order at 3-4.) standing

7.      On July 30, 2012, Wilson and AB&C pled guilty to two counts of mail fraud.

8.      On November 13, 2012, Wilson was sentenced to a 235 month term of imprisonment.

9.      AB&C was sentenced to a five year term of probation and a fine was imposed.

10. Wilson and AB&C were ordered to pay restitution in the amount of $57,401,009.00.

2

11.     To effectuate the fraudule nt investment scheme, Wilson, through other persons and his company AB&C, recruited individuals to invest in silver bullion with promises of high rates of return.

PARTIES

12.     At all tim es relevant hereto, Def endant Allied Energy, Inc. ("Allied") was a corporation existing under the laws of the state of Florida w ith its principal place of business in the state of Kentucky.

13.     This action seeks dam ages and rescissions suffered by Plain tiff as the direct an d proximate result of Defendant's wrongful and im proper sale of securiti es in transactions reaching to and relating to residents of the state of South Carolina.

14.     Ronnie Gene W ilson and his wife, Cassi e Wilson, purchased securities from Defendant with funds that flowed directly from AB&C accounts.

ACTUAL ALLEGATIONS

15.     Allied holds itself out as a sponsor or issuer of securities in oil and gas partnerships through which it claims to raise funds for drilling and development of oil and gas wells.

16.     In February of 2011, Ronnie Wilson and his wife, Cassie Wilson, were at the Atlantis Resort, Paradise Island, Bahamas.

17.     At the Atlantis Reso rt, Allied Energy sponsor ed a contest in which it o ffered prizes such as iPads or $1,000 cash for res ort guests who provided personal information to Allied Energy which Allied Energy used to genera lly and illegally solicit the purchase of securities and investment opportunities.

18.     Prior to the contest solicitation at the Atlantis Re sort, Ronnie and Cassie W ilson had no prior dealings or relationship with Allied Energy.

19. Based upon the general advertisement and soli citation at the Atlantis Resort, Allied Energy provided information to the W ilsons regarding purchase of securities in two specific partnerships: (1) Grimes County #4 and (2) 2011 Allied Grimes #3 PUD JV.

20. At all tim es relevant hereto, Grim es County #4 Partnership was a partnership organized and existing under the laws of the state of Kentucky.

21. Allied Energy represented that th e purpose of Grimes County # 4 Partnership was to drill a well in Grimes County, Texas.

22. At all tim es relevant hereto, 2011 Allied Grimes #3 PUD JV Partnership was a partnership organized and existing under the laws of the state of Kentucky.

23. Allied Energy represented that the purpos e of 2011 Allied Grimes County # 3 PUD JV Partnership was to drill a well in Grimes County, Texas.

24. The securities offered to and sold to the W ilsons and issued by Allied Energy wer e not registered with the U.S. Securities and Exchange Commission.

25. The securities offered to and sold to the W ilsons were not reg istered with the appropriate agency within the state of South Carolina.

26. The securities issued b y Allied Energy a nd offered to and sold to the W ilsons involved a public offering.

27. Allied sold the securities to non-accredited investors, engaged in general solicitation and advertising, and failed to provide non-accredited investors with the types of inform ation and disclosures generally required to be provided to them under securities laws.

28. Upon information and belief, over 35 non-accredited investors were solicited and sold to by the issuer in each of these offerings.

29. Allied Energy used the mails and interstate commerce in the sale of these securities

4

from Kentucky to the Wilsons in South Carolina.

30.     Upon information and belief, the investors in the Allied Energy partnerships come from all walks of life, are located in multiple states, and are often unsophisticated investors. The Grimes County #4 Partnership involved 64 investors and the 2011 Allied Grimes #3 PUD JV involved 82 investors.

31.     On or about February 19, 2011, Cassie Wilson, at the direction of and in concert with Ronnie Wilson, signed a subscription agreement for the purchase of one unit of 2011 Allied Grimes #3 PUD JV and paid the amount of $104,448.00 via a wire transfer. This was represented by Allied Energy to be a one percent interest in a well to be drilled by the Partnership in Grimes County, Texas.

32.     On or about February 25, 2011, a representative of Allied Energy executed, countersigned and accepted the subscription agreement.

33.     The $104,448.00 used to purchase the partnership unit in #3 PUD-JV from Allied flowed directly from AB&C accounts.

34.     Allied Energy knew or should have known that the funds used to purchase the securities regarding 2011 Allied Grimes #3 PUD JV were funds from AB&C.

35.     The Federal Tax identification number provided to Allied Energy as the Tax identification of the investor in 2011 Allied Grimes #3 PUD JV was the number for AB&C.

36.     On or about April 15, 2011, Cassie Wilson, at the direction of and in concert with Ronnie Wilson, signed a subscription agreement for the purchase of one unit in the partnership named Grimes County #4 and paid the amount of $128,428.00 for one unit via a wire transfer. This was represented by Allied Energy to be a one percent interest in a well to be drilled in Grimes County, Texas, by this Partnership.

37.    On or about April 21, 2011, a representative of Allied Energy countersigned and accepted the subscription agreement on behalf of Allied Energy.

38.    The $128,428.00 used to purchase the partnership unit in Grimes County # 4 from Allied flowed directly from AB&C Accounts.

39.    Allied Energy knew or should have known that the funds used to purchase the securities regarding Grimes County #4 were funds from AB&C.

40.    The Federal Tax identification number provided to Allied Energy as the Tax identification of the investor in Grimes County #4 was the number for AB&C.

41.    Allied Energy serves as managing general partner for Grimes County #4 Partnership.

42.    Allied Energy serves as managing general partner for 2011 Allied Grimes County #3 PUD JV Partnership.

43.    Allied Energy's partnerships present investors with a turnkey operation for the partnerships, and Allied Energy often owns interests in the partnerships or an interest in the property in which the partnerships' wells are to be drilled.

44.    The investors, including the Wilsons, holding units in Grimes County #4 Partnership and/or 2011 Allied Grimes County #3 PUD JV Partnership were led to expect profits solely from Defendant's efforts in managing and overseeing, and operating the underlying wells or property.

45.    The Grimes County #4 Partnership leaves so little power in the hands of the investing partners that the arrangement in fact distributes power as would a limited partnership.

46.    The 2011 Grimes County #3 PUD JV Partnership leaves so little power in the hands of the investing partners that the arrangement in fact distributes power as would a limited partnership.

6

47.     The investing partners, including Ronnie and Cassie Wilson, are so inexperienced and unknowledgeable in the partnership's business affairs that they are incapable of exercising reasonable partnership powers.

48.     Allied failed to make necessary filings with the SEC and the state of South Carolina.

49.     Upon information and belief, commissions or other remunerations were paid or given directly or indirectly to a person or persons other than a registered broker-dealer.

50.     The securities sold to the Wilsons were not registered under the laws of the United States or the laws of South Carolina law.

51.     Allied Energy made all substantial or substantive decisions regarding the operation of the partnership for Grimes County #4 without input or a vote from the other investors, including the Wilsons.

52.     Allied Energy made all substantial or substantive decisions regarding the operation of the partnership for 2011 Allied Grimes #3 PUD JV without input or a vote from the other investors, including the Wilsons.

53.     After the execution of the subscription agreement by the Wilsons, Allied Energy materially changed the agreement, without prior notice and without the consent of the Wilsons, by replacing the purpose of the 2011 Allied Grimes #3 PUD JV partnership from drilling a well in Grimes County, Texas to a well in Wood County, Texas.

54.     Allied Energy enticed investors for 2011 Allied Grimes #3 PUD JV, including the Wilsons, with information and a proposal regarding a drilling opportunity in Grimes County, only to materially alter the terms of the investment to a location for which no information was provided.

55.     After the execution of the subscription agreement by the Wilsons, Allied Energy

materially changed the agreem ent, without prior notice and without the consent of the Wilsons, by replacing the purpose of the Gri mes County #4 partnership from drilling a well in Grimes County, Texas to a well in Cherokee County, Texas.

56. Allied Energy enticed investors for Grim es County #4, including the W ilsons, with information and a proposal regarding a drill ing opportunity in Grim es County, only to materially alter the te rms of the investm ent to a location for which no inf ormation was provided.

57. The information regarding the location of the drilling site being within Grim es County is m aterial to the W ilsons and to any reasonable inve stor because it allows the investor to investigate the history of well production in the area prior to m aking the investment.

58. Allied Energy materially altered the terms of the investment knowing that this "bait and switch" was a schem e to defraud investors, that its statements regarding the in vestment were untrue, and that it woul d and did operate a fraud and deceit upon investors, including the Wilsons.

## COUNT ONE
### (Unregistered Offer and Sale of Securities; Violation of §5 of the Securities Act)

59. Plaintiff realleges and reasserts each and every allegation provided above and incorporates by reference the prior paragraphs to the extent not inconsistent herewith.

60. Allied Energy, by engaging in the conduct d escribed above, directly o r indirectly, made use of means of instruments of transportation or communication of interstate commerce or of the mails to of fer a sale or to sell se curities, or to ca use such se curities to be carr ied through the mails or interstate commerce for the purpose of sale or for delivery after sale.

61.    No registration statement has been filed with the SEC or has been in effect with respect to the any of offerings or securities alleged herein.

62.    By engaging in conduct described above, Allied Energy violated Section 5 of the Securities Act and there is no type of exemption from registration based upon the acts of this matter.

63.    As a result of the violations of securities laws, Plaintiff is entitled to rescission of the investment and return of all investment capital plus accrued interest.

## COUNT TWO
### (Violation of South Carolina Securities Laws)

64.    Plaintiff realleges and reasserts each and every allegation provided above to the extent not inconsistent herewith.

65.    Allied Energy, by engaging in the conduct described above, directly or indirectly, offered and sold securities in the state of South Carolina which were not federally covered securities, not exempted from registration, and not registered pursuant to South Carolina law in violation of S.C. Code Ann. §35-1-301.

66.    As a result of the violations of South Carolina securities laws, Plaintiff is entitled to rescission of the investment and return of all investment capital plus accrued interest.

## COUNT THREE
### (Violation of Section 10(b) of the Exchange Act and Rule 10b-5)

67.    Plaintiff realleges and reasserts each and every allegation provided above to the extent not inconsistent herewith.

68.    Allied Energy made material misrepresentations and omissions to investors regarding the County in which the wells would be located.

69.    Allied Energy by engaging in the conduct described above, directly and indirectly, in

connection with the purchase and sale of securi ties, by use of m eans or instrumentalities of interstate commerce or of the mails, with scienter:

    a.  Employed devices, schemes, or artifices to defraud;

    b.  Made untrue statements of a m aterial fact or omitted a material fact necessary in order to m ake statements made, in light of the circum stances under which they were made, not misleading; or

    c.  Engaged in acts, practices, or course s of business which operated or would operate as a fraud or deceit upon other persons.

70.    By engaging in the conduct described herei n, Plaintiff violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## COUNT FOUR
### (Contract Rescission regarding Grimes County #4)

71.    Plaintiff realleges and reasserts each a nd every allegation provided above to the extent not inconsistent herewith.

72.    Plaintiff entered into the investments in Grimes County #4 described herein in the good faith belief that the representations by Allied Energy regarding the partnership and the locations of the drilling sites being in Grimes County Texas were true and accurate.

73.    Allied Energy's failure to ac curately state the information regarding the investment in Grimes County #4 and its material change in the investment substantially defeat the purpose of the Subscription Agreement and Partnership Agreement.

74.    Plaintiff can be ret urned to the s tatus quo pri or to enteri ng into the G rimes County #4 Subscription Agreement and Partne rship Agreement through the return of consideration and rescission of the contracts.

75.    Plaintiff is entitled to re  scission of the Subscription Agreement and Partnership Agreement.

76.    Plaintiff is entitled to  the return of Plaintif fs consideration of the S ubscription Agreement and Partnership Agreement and all additional sums necessary to restore Pl aintiff to the pos ition prior to entering into the Subscription Agreement and Partnership Agreement.

## COUNT FIVE
### (Contract Rescission regarding 2011 Allied Grimes #3 PUD JV)

77.    Plaintiff  realleges and reasserts each a   nd  every allegation provided above to the extent not inconsistent herewith.

78.    Plaintiff entered into the investments in 2011 Allied Grimes #3 PUD JV described herein in the good faith belief that the representations by Allied Energy regarding the partnership and the locations of the drilling sites being in Grimes County Texas were true and accurate.

79.    Allied Energy's failure to ac  curately state the  information regarding the  investment in 2011 Allied Grimes #3 PUD JV and its material change in the investment substantially defeat the purpose of the Subscription Agreement and Partnership Agreement.

80.    Plaintiff can be returned to the status quo prior to entering into the 2011 Allied Grimes #3 PUD JV Subscription Agreement and Partnership Agreement through the return of consideration and rescission of the contracts.

81.    Plaintiff is entitled to re  scission of the Subscription Agreement and Partnership Agreement.

82.    Plaintiff is entitled to  the return of Plaintif fs consideration of the S ubscription Agreement and Partnership Agreement and all additional sums necessary to restore Pl aintiff to the pos ition prior to entering into the Subscription Agreement and Partnership Agreement.

WHEREFORE, Plaintiff prays for rescission of the securities investments and an award of actual damages in the amount of $232,876 plus interest as allowed by law, consequential and incidental damages in amounts to be determined by the trier of fact, and for its costs, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/William S. Brown

**THE TOLLISON LAW FIRM, P.A.**

L. Walter Tollison, III
Federal Bar No. 4117
Walt.tollison@thetollisonlawfirm.com
Lauren S. Price
Federal Bar No. 10406
Lauren.price@thetollisonlawfirm.com
24 Vardry Street, Suite 203
Greenville, South Carolina 29601
Phone:   (864) 451-7038
Fax:       (864) 451-7591

**Nelson Mullins Riley & Scarborough, LLP**

William S. Brown
Federal Bar No. 5929
E-Mail: william.brown@nelsonmullins.com
Sarah A. Anderson
Federal Bar No. 11405
E-Mail:  sarah.anderson@nelsonmullins.com
104 South Main Street / Ninth Floor
Post Office Box 10084 (29603-0084)
Greenville, SC  29601
(864) 250-2300

**Attorneys for the Receiver**

January 27, 2014
Greenville, South Carolina