# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### ANDERSON/GREENWOOD DIVISION

Beattie B. Ashmore, In His Capacity as )    Civil Action No. 8:14-cv-00227-JMC
Court-Appointed Receiver for Ronnie Gene )
Wilson and Atlantic Bullion and Coin, Inc., )
                                     )
               Plaintiff(s), )
v.                                  )     **ORDER AND OPINION**
                                       )
Allied Energy, Inc.,            )
                                       )
               Defendant. )
_____ )

      Plaintiff Beattie B. Ashmore ("Plaintiff"), In His Capacity as Court-Appointed Receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed the instant action against Defendant Allied Energy, Inc. ("Allied"), to recover money used to purchase an investment interest in two (2) wells that were to be drilled in Grimes County, Texas. (See ECF No. 1.)

      This matter is before the court pursuant to Allied's Motion to Transfer Venue to the United States District Court for the Western District of Kentucky ("Western District of Kentucky") pursuant to 28 U.S.C. § 1404(a).[1] (ECF No. 11.) Plaintiff opposes Allied's Motion to Transfer Venue in its entirety. (ECF No. 17.) For the reasons set forth below, the court **DENIES** Allied's Motion to Transfer Venue.

## I.    RELEVANT BACKGROUND TO PENDING MOTION

      Allied develops oil and gas wells in Oklahoma and Texas. (ECF No. 12 at 1.) In 2011,

---

[1] The court notes that Allied originally filed its motion as a Motion to Dismiss the Case pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) or in the alternative to Transfer Venue pursuant to 28 U.S.C. § 1404(a). However, in its Reply to Plaintiff's Response, Allied agreed with Plaintiff that it could not seek to enforce a forum selection clause and have the case dismissed pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a). (ECF No. 18 at 2 (citing Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 134 S. Ct. 568, 577 (2013).) Accordingly, Allied's Motion to Dismiss is **DENIED AS MOOT**.

Wilson's wife, Cassie Wilson, signed two (2) subscription agreements and purchased an investment interest in two (2) well projects identified as 2011 Allied Grimes #3 PUD JV and Grimes County #4.  (See ECF No. 12-1.)  Each subscription agreement contained a forum selection clause stating that the subscriber "understand[s] and accept[s] that all provisions of this Agreement are made in Warren County, Kentucky, and that venue and jurisdiction for all matters in dispute shall also be in Warren County, Kentucky, Commonwealth of Kentucky, and USA." (Id. at 5, 13.)

On April 11, 2012, Wilson[2] and AB&C were charged in an Information with two (2) counts of mail fraud stemming from their involvement in a criminal Ponzi scheme involving hundreds of victims and millions of dollars.  (ECF No. 11 (Crim. No. 8:12-cr-320-JMC).)  On April 17, 2012, the United States of America (the "Government") filed a Consent Motion for Appointment of a Federal Receiver.  (ECF No. 17 (Crim. No. 8:12-cr-320-JMC).)  On May 24, 2012, the court granted the Government's Consent Motion for Appointment of a Federal Receiver and on June 13, 2012 appointed Plaintiff as Receiver of all "assets, properties, books and records, and other items" of Wilson and AB&C and their alter egos (collectively "AB&C Receivership Entities").[3]  (ECF Nos. 30, 31 (Crim. No. 8:12-cr-320-JMC).)  Pursuant to instructions received from the court, the Receiver was tasked with locating and managing assets previously acquired by and/or in the name/possession of the AB&C Receivership Entities, and taking actions necessary for the protection of investors, including, but not limited to, initiating actions against individuals or companies to whom monies or assets were transferred that are directly traceable to the unlawful Ponzi scheme run by Wilson and AB&C.  (ECF No. 43 at 2–5

---

[2] Wilson was the sole shareholder and the president of AB&C.
[3] The alter egos of Wilson and AB&C included the following:  Republic Bullion & Coin, Inc.; Henry & Crowder Family Ltd. Partnership; Henry & Crowder, LLC; Bailey & Rice Family Ltd. Partnership; Live Oak Farms; Smallwood Family Trust; Professional Planning of Easley, LLC; and their subsidiaries, successors and assigns.

(C/A No. 8:12-cv-2078-JMC).)

On January 27, 2014, Plaintiff filed a Complaint against Allied seeking to rescind the securities investment in the two (2) aforementioned wells and recover approximately $232,876.00 in damages. (ECF No. 1.) In response to Plaintiff's Complaint, Allied filed an Answer and the Motion to Transfer Venue on April 4, 2014. (ECF Nos. 9, 11.) Plaintiff filed opposition to the Motion to Transfer Venue on May 1, 2014, to which Allied filed a Reply to Plaintiff's Response on May 12, 2014. (ECF Nos. 17, 18.)

## II.    LEGAL STANDARD

A.    Motions to Transfer Venue pursuant to 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." Id. "Whether a case should be transferred to an alternative venue rests within the sound discretion of the district court." Sw. Equip., Inc. v. Stoner & Co., Inc., C/A No. 6:10-1765-HMH, 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010) (citing In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984)). A district court must "engage in an 'individualized case-by-case consideration of convenience and fairness [ ]'" when considering a motion to transfer. Id. (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)); see also Avant v. Travelers Ins. Co., 668 F. Supp. 509, 510 (D.S.C. 1987) ("Generally, the test of whether an action should be transferred to another jurisdiction is one of balancing convenience"). When undertaking this individualized analysis, courts weigh the following factors: (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view [of the premises] by the jury; (6) the interest in

having local controversies decided at home; and (7) the interests of justice.  Id. (citing Landers v. Dawson Constr. Plant, Ltd., Nos. 98-2709, 98-2763, 1999 WL 991419, at *2 (4th Cir. Nov. 2, 1999)).

The movant has the burden to demonstrate that a transfer of venue is appropriate.  Gerber v. Canfield, 315 F. Supp. 1175, 1177 (D.S.C. 1970).

B.    Forum Selection Clauses in the Context of § 1404(a) Motion to Transfer Venue

"[F]ederal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case . . . ."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988).  In Stewart, the United States Supreme Court addressed how a motion to transfer under § 1404 interplays with a contractual forum selection clause.  The Court in Stewart explained:

> Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs.  The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of the interest of justice.  It is conceivable in a particular case, for example, that because of these factors a district court acting under § 1404(a) would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause . . . .  The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration . . . nor no consideration . . . , but rather the consideration for which Congress provided in § 1404(a).

487 U.S. at 30–31 (internal quotation marks and citations omitted).

However, "[b]efore the 'case-specific factors' are balanced under § 1404(a), the [c]ourt must first determine whether the forum-selection clause is valid under federal law, and therefore is able to be considered as a factor under § 1404(a)."  Republic Mortg. Ins. Co. v. Brightware, Inc., 35 F. Supp. 2d 482, 484 (M.D.N.C. 1999).  A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10 (1972).  A

forum-selection clause may be considered unreasonable if "(1) [its] formation was induced by fraud or over-reaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4)[its] enforcement would contravene a strong public policy of the forum state." Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 651 (4th Cir. 2010) (quoting Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)).

## III.    ANALYSIS

A.    The Parties' Arguments

1.    *Allied*

Allied contends that it has presented a valid forum selection clause that is enforceable because there is not any actual evidence of "fraud, influence, or overweening bargaining power." (ECF No. 18 at 2.)  In this regard, Allied argues that the court should grant its Motion to Transfer Venue because Plaintiff is bound by the forum selection clause in the subscription agreements because he stepped "into Wilson's shoes and . . .  Wilson was in a position to know and to foresee that the forum selection clause could be enforced against him, . . . ." (ECF No. 12 at 11.) Allied further argues that convenience factors support transferring the case to the Western District of Kentucky because the company's main office is in Kentucky, any witnesses it would need to call or subpoena are in Kentucky, and its records are in Kentucky.  (Id.)

In addition to the foregoing, Allied asserts in reply to Plaintiff's arguments that it has not waived its right to challenge venue because it alleged in its Answer and in its Motion to Transfer Venue that it was challenging venue.  (ECF No. 18 at 9 (referencing ECF No. 9 at 1 ¶ 4 ("Allied denies the allegations contained in Complaint paragraph 3 and submits along with its Answer a

Motion to Change Venue pursuant to 28 U.S.C. § 1404.")).)

> 2. *Plaintiff*

Plaintiff opposes the Motion to Transfer Venue asserting that venue is proper in the United States District Court for the District of South Carolina ("District of South Carolina") and the factors required to be weighed under § 1404 do not support a transfer of venue from this proper district. Plaintiff argues that venue is proper in the District of South Carolina under federal receivership statutes (28 U.S.C. §§ 754, 1692) and because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in South Carolina. (ECF No. 17 at 4 (citing, e.g., 28 U.S.C. §§ 754, 1391(b)(2), 1692).) Plaintiff further argues that even if the forum selection clause is valid, the § 1404(a) factors support venue in the District of South Carolina in that (1) Allied as a highly profitable energy company has greater resources to permit its witnesses to travel; (2) litigating in the Western District of Kentucky would be much more expensive for Plaintiff, "which [expenses] would come out of the receivership estate, and if there was any recovery by the [Plaintiff] Receiver in this case, these additional expenses would diminish the net assets available to the investors"; (3) the court is already familiar with the case and it would conserve judicial resources to continue litigating the case in the District of South Carolina; and (4) there is a strong local interest in deciding the controversy in South Carolina because South Carolina citizens were victimized by Wilson's scheme. (Id. at 8–10.)

Plaintiff also asserts that Allied "waived the right to challenge venue by failing to assert it as an affirmative defense in the [A]nswer." (Id. at 11.) Moreover, Plaintiff asserts that the forum selection clause in the subscription agreements is unenforceable because "it was the product of fraud or overreaching [based on an alleged misrepresentation regarding the location of the wells] and would contravene a strong public policy of the forum" as it relates to the

marketing and selling of securities.  (Id. at 12-16.)

B.    The Court's Review

Upon review, the court finds that even if the subscription agreements at issue contained valid, enforceable forum selection clauses, the § 1404 convenience factors require litigating Plaintiff's claims in this forum.  In reaching this conclusion, the court notes that the parties' lack of actual specificity regarding estimated costs for litigating in each venue and the number of and characteristics of potential witnesses (i.e., names, location) or relevant documents resulted in neither venue being found more favorable in the analysis of the "ease of access to sources of proof," "convenience of the parties and witnesses," "cost of obtaining the attendance of witness," and "availability of compulsory process" factors.  See, e.g., Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1258 (4th Cir. 1991) ("No matter which forum is selected, one side or the other will be burdened with bringing themselves and their witnesses from far away."); Avant v. Travelers Ins. Co., 668 F. Supp. 509, 510 (D.S.C. 1987) (finding that there must be "evidence of record on the issue of convenience other than the allegations within the memorandum attached to the motion to change venue"); see also 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3851 (3d ed. 2010) (Generally, "[t]he party seeking the transfer must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover.").

As to the remaining factors[4], the court agrees with Plaintiff that Wilson's victimization of numerous citizens of South Carolina provides an appropriate basis for why South Carolina has a significant interest in presiding over the controversy, which weighs in favor of retaining the case in the District of South Carolina.  The court further agrees with Plaintiff that the court's familiarity with the relevant facts and legal issues allows the reasonable conclusion that the

---

[4] The "possibility of a view of the premises" factor is irrelevant in the instant action.

District of South Carolina could handle the matter more efficiently than the Western District of Kentucky.  <u>Milliken & Co., Inc. v. Reynolds</u>, C.A. No. 7:12–cv–02301–JMC, 2012 WL 5354399, at *8 (D.S.C. Oct. 26, 2012) ("The interest of justice encompasses public interest factors aimed at 'systemic integrity and fairness.'  Judicial economy and the avoidance of inconsistent judgments are prominent among the principal elements of systemic integrity.") (Internal citation omitted).  In light of the foregoing, the forum selection clauses would have been dispositive of the transfer issue if the "local interest" factor and the "interests of justice" factor did not weigh so heavily in favor of maintaining this action in the District of South Carolina.

Thus, having considered the relevant factors under § 1404(a), the court finds that this case should not be transferred to the Western District of Kentucky as requested by Allied.

## IV.    CONCLUSION

Upon careful consideration of the entire record and for the reasons set forth above, the court hereby **DENIES** Defendant Allied Energy, Inc.'s Motion to Transfer Venue to the United States District Court for the Western District of Kentucky.  (ECF No. 12.)

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

January 9, 2015
Columbia, South Carolina