# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Beattie B. Ashmore, In His Capacity as Court-Appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion and Coin, Inc., ) ) ) ) Plaintiff(s), ) ) v. ) ) Allied Energy, Inc., ) ) Defendant. ) ) | Civil Action No. 8:14-cv-00227-JMC  **ORDER AND OPINION** |

Plaintiff Beattie B. Ashmore ("Plaintiff"), in his capacity as court-appointed receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed the instant action against Defendant Allied Energy, Inc. ("Defendant"), to recover money from the Wilson-AB&C Ponzi scheme[1] used to purchase an investment interest in two (2) oil wells that were to be drilled in Grimes County, Texas. (See ECF No. 1.)

This matter is before the court pursuant to Defendant's Motion to Clarify the Method for Production of Documents pursuant to Fed. R. Civ. P. 26 and 33. (ECF No. 52.) Plaintiff opposes Defendant's Motion to Clarify in its entirety. (ECF No. 57.) For the reasons set forth below, the court **DENIES** Defendant's Motion to Clarify.

---

[1] "A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program." United States v. Wilson, Cr. No. 8:12-cr-00320-JMC, ECF No. 1-1 at 2 ¶ 6 (D.S.C. Apr. 4, 2012). In Wilson, the United States alleged that Wilson, through AB&C, "orchestrated a Ponzi scheme whereby he led investors to believe that he was investing their money in silver, when, in fact, Wilson was not buying silver but using the money for his personal gain . . . [and] [t]o keep the Ponzi scheme going, Wilson also made payments to earlier investors to whom Wilson made representations that their investments were earning high rates of return–sometimes in excess of 200 percent. Id. at ECF No. 17 at 1.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

Plaintiff is the court appointed Receiver in <u>In Re: Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc.</u>, C/A No. 8:12-cv-02078-JMC, ECF No. 1 (D.S.C. July 25, 2012), a case related to the instant matter. Defendant develops oil and gas wells in Oklahoma and Texas. (ECF No. 12 at 1.)

Plaintiff alleges that "[o]n or about February 19, 2011, Cassie Wilson, at the direction of and in concert with Ronnie Wilson, signed a subscription agreement for the purchase of [an investment interest in] one unit of [an oil well project identified as] 2011 Allied Grimes #3 PUD JV and paid the amount of $104,448.00 via a wire transfer." (ECF No. 1 at 5 ¶ 31.) Plaintiff further alleges that "[o]n or about April 15, 2011, Cassie Wilson, at the direction of and in concert with Ronnie Wilson, signed a subscription agreement for the purchase of [an investment interest in] one unit in the [an oil well] partnership named Grimes County #4 and paid the amount of $128,428.00 for one unit via a wire transfer." (<u>Id.</u> at ¶ 36.) In conjunction with the foregoing, Plaintiff alleges that Defendant was aware that investment by Cassie Wilson was made using funds that flowed directly from the Wilson-AB&C Ponzi scheme. (<u>Id.</u> at 1 ¶ 14, 5 ¶ 34 & 6 ¶ 39.)

Based on his appointment as Receiver tasked with "locating, managing, recouping, and distributing the assets of the Wilson-AB&C investment scheme," Plaintiff commenced the instant action against Defendant on January 27, 2014, seeking to rescind the securities investment in the two (2) aforementioned wells and recover approximately $232,876.00 in damages. (ECF No. 1 at 1 ¶ 1 & 8 ¶ 59–11 ¶ 82.) In response to Plaintiff's Complaint, Defendant filed an Answer on April 4, 2014. (ECF No. 9.)

Thereafter, Plaintiff served his First Set of Interrogatories and First Set of Requests to

Produce on Defendant on or about April 1, 2015.  (ECF No. 37-1 at 3.)  Defendant served responses to these discovery requests on or about June 26, 2015.  (ECF No. 37-3 at 34.)  Because of perceived deficiencies in Defendant's discovery responses, Plaintiff filed a Motion to Compel on September 2, 2015, seeking to have Defendant "more fully and accurately respond to Interrogatories Nos. 1, 2, 8, 9, 10, 11, 12, 14, 20, 22, 23, 24 and Requests for Production Nos. 10, 12, 13, 15, 16, 17, 21, 25, 26, 32, and 33 . . . ."  (ECF No. 37 at 1.)  The court granted Plaintiff's Motion to Compel on December 9, 2015, and ordered Defendant "to respond to Plaintiff's discovery requests addressed in its Motion to Compel (ECF No. 37) . . . ."  (ECF No. 51 at 3.)

To ensure compliance with the court's December 9, 2015 Order, Defendant filed its Motion to Clarify seeking permission to either (1) charge Plaintiff a reasonable copying cost of $1.00 per page to copy and produce documentation in compliance with the court's order or (2) require "Plaintiff's counsel to come to . . . [Defendant's] headquarters in Bowling Green, Kentucky so that Plaintiff can inspect and copy the documents that are desired by Plaintiff."  (ECF No. 52 at 2.)

## II.     LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  "Under . . . [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or

3

expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978). "In determining whether to shift the costs of discovery to the requesting party, factors to consider include: (1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefit to the parties of obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and, (8) the resources available to each party." Ybanez v. Milyard, C/A No. 07-cv-01976-PAB-MJW, 2009 WL 1289181, at *1 (D. Colo. May 6, 2009) (citing Rowe Entm't, Inc. v. The William Morris Agency, Inc., 205 F.R.D. 421, 429 (S.D.N.Y. 2002)).

"Generally, the party resisting discovery bears the burden of showing that the requested discovery is irrelevant to the issues or is overly broad, unduly burdensome, unreasonable, or oppressive." Brady v. Grendene USA, Inc., No. 12cv604-GPC (KSC), 2012 WL 6086881, at *2 (S.D. Cal. Dec. 6, 2012) (citing Henderson v. Holiday CVS, L.L.C., 269 F.R.D. 682, 686 (S.D. Fla. 2010)). "If the resisting party meets its burden, the burden shifts to the moving party to show the information is relevant and necessary." Id.

### III.     ANALYSIS

In its Motion to Clarify, Defendant asserts that "approximately 400,000 pages of documents would need to be provided to Plaintiff to ensure that . . . [Defendant] complied with this Court's order." (ECF No. 52 at 1.) Defendant further asserts that Plaintiff's claim "is for approximately $250,000.00," and "it will cost hundreds of thousands of dollars to comply with the Court's order in its present form." (Id.) Therefore, "[i]t is . . . Defendant's position that as

much as $400,000.00 in copying costs for a $250,000.00 case is unduly burdensome and is an unreasonable burden." (ECF No. 59 at 2.)

Notwithstanding the breadth of the production it alleges it will have to undertake to comply with the court's Order, Defendant did not submit any documentation (i.e., statement of work or invoice) that either establishes the proposed cost of production or a cost estimate for an alternative form of production (such as by disc or hard drive).[2]  Moreover, there is no information before the court regarding Defendant's resources or financial condition to assess its ability to fund the cost of the document production. See United Parcel Serv. of Am., Inc. v. The Net, Inc., 222 F.R.D. 69, 71 (E.D.N.Y. 2004) ("The Advisory Committee Notes expressly state that judges may take into account financially 'weak' litigants when issuing discovery orders." (citing Advisory Committee Notes to 1983 Amendment to Rule 26(b)(2))).  Without the aforementioned cost/financial information, the court concludes that Defendant cannot demonstrate that the document production to Plaintiff is unduly burdensome, unreasonable, or oppressive. See, e.g., Convertino v. U.S. Dep't of Justice, 565 F. Supp. 2d 10, 14 (D.D.C. 2008) ("This Court only entertains an unduly burdensome objection when the responding party demonstrates how [discovery of] the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.") (internal quotation marks and citation omitted); Cory v. Aztec Steel Bldg., Inc., 225 F.R.D. 667, 672 (D. Kan. 2005) ("In opposing discovery on the grounds of burdensomeness, a party has 'the burden to show facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome . . . . This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested

---

[2] In this regard, there is no evidence in Defendant's filings that its request for $1.00 per page to copy the documents to be produced is commensurate to the rate per copy charged by low-cost commercial copying businesses, such as Kinko's.

documents.") (internal and external citations omitted); Bank of Mongolia v. M & P Global Fin. Servs., Inc., 258 F.R.D. 514, 519 (S.D. Fla. 2009) ("[C]laims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.") (citation omitted).

Accordingly, the court finds that Defendant should produce all documentation required by the December 9, 2015 Order (ECF No. 51) granting Plaintiff's Motion to Compel (ECF No. 37) within fourteen (14) days of the entry date of this Order.

## IV.     CONCLUSION

Upon careful consideration of the parties' arguments and for the reasons set forth above, the court hereby **DENIES** Defendant Allied Energy, Inc.'s Motion to Clarify the Method for Production of Documents. (ECF No. 52.)

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

January 22, 2016
Columbia, South Carolina