# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Beattie B. Ashmore, In His Capacity as Court-Appointed Receiver for Ronnie Gene Wilson and Atlantic Bullion and Coin, Inc., ) ) ) ) | Civil Action No. 8:14-cv-00227-JMC |
| Plaintiff(s), ) ) | |
| v. ) ) | **ORDER AND OPINION** |
| Allied Energy, Inc., ) ) ) | |
| Defendant. ) ) | |

Plaintiff Beattie B. Ashmore ("Plaintiff"), in his capacity as court-appointed receiver for Ronnie Gene Wilson ("Wilson") and Atlantic Bullion and Coin, Inc. ("AB&C"), filed the instant action against Defendant Allied Energy, Inc. ("Defendant"), to recover money from the Wilson-AB&C Ponzi scheme[1] used to purchase an investment interest in 2 oil wells that were to be drilled in Grimes County, Texas. (See ECF No. 1.)

This matter is before the court pursuant to Plaintiff's Motion for Rule to Show Cause for Sanctions pursuant to Fed. R. Civ. P. 37. (ECF No. 62.) Specifically, Plaintiff moves for an order compelling Defendant "to appear before the Court and show cause why the Court should not find Defendant in contempt and order such sanctions as are just for its failure to comply with the Court's Orders dated December 9, 2015 and January 25, 2016." (Id. at 1 (citing ECF Nos.

---

[1]"A Ponzi scheme is a fraudulent investment program in which funds are paid in by investors and later investors['] funds are used to pay out nonexistent phantom profits to the original investors, thus creating the illusion that the fraudulent investment program is a successful, profit generating enterprise which, in turn attracts new investment funds that are used to sustain the fraudulent program." United States v. Wilson, Cr. No. 8:12-cr-00320-JMC, ECF No. 1-1 at 2 ¶ 6 (D.S.C. Apr. 4, 2012). In Wilson, the United States alleged that Wilson, through AB&C, "orchestrated a Ponzi scheme whereby he led investors to believe that he was investing their money in silver, when, in fact, Wilson was not buying silver but using the money for his personal gain . . . [and] [t]o keep the Ponzi scheme going, Wilson also made payments to earlier investors to whom Wilson made representations that their investments were earning high rates of return–sometimes in excess of 200 percent. Id. at ECF No. 17 at 1.

51, 61).)  Defendant opposes Plaintiff's Motion for Rule to Show Cause in its entirety.  (ECF No. 63.)  For the reasons set forth below, the court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Rule to Show Cause.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

Plaintiff is the court appointed Receiver in <u>In Re: Receiver for Ronnie Gene Wilson and Atlantic Bullion & Coin, Inc.</u>, C/A No. 8:12-cv-02078-JMC, ECF No. 1 (D.S.C. July 25, 2012), a case related to the instant matter.  Defendant develops oil and gas wells in Oklahoma and Texas.  (ECF No. 12 at 1.)

Plaintiff alleges that "[o]n or about February 19, 2011, Cassie Wilson, at the direction of and in concert with Ronnie Wilson, signed a subscription agreement for the purchase of [an investment interest in] one unit of [an oil well project identified as] 2011 Allied Grimes #3 PUD JV and paid the amount of $104,448.00 via a wire transfer."  (ECF No. 1 at 5 ¶ 31.)  Plaintiff further alleges that "[o]n or about April 15, 2011, Cassie Wilson, at the direction of and in concert with Ronnie Wilson, signed a subscription agreement for the purchase of [an investment interest in] one unit in the [an oil well] partnership named Grimes County #4 and paid the amount of $128,428.00 for one unit via a wire transfer."  (<u>Id.</u> at ¶ 36.)  In conjunction with the foregoing, Plaintiff alleges that Defendant was aware that investment by Cassie Wilson was made using funds that flowed directly from the Wilson-AB&C Ponzi scheme.  (<u>Id.</u> at 1 ¶ 14, 5 ¶ 34 & 6 ¶ 39.)

Based on his appointment as Receiver tasked with "locating, managing, recouping, and distributing the assets of the Wilson-AB&C investment scheme," Plaintiff commenced the instant action against Defendant on January 27, 2014, seeking to rescind the securities investment in the 2 aforementioned wells and recover approximately $232,876.00 in damages.

(ECF No. 1 at 1 ¶ 1 & 8 ¶ 59–11 ¶ 82.)  In response to Plaintiff's Complaint, Defendant filed an Answer on April 4, 2014.  (ECF No. 9.)

Thereafter, Plaintiff served his First Set of Interrogatories and First Set of Requests to Produce on Defendant on or about April 1, 2015.  (ECF No. 37-1 at 3.)  Defendant served responses to these discovery requests on or about June 26, 2015.  (ECF No. 37-3 at 34.)  Because of perceived deficiencies in Defendant's discovery responses, Plaintiff filed a Motion to Compel on September 2, 2015, seeking to have Defendant "more fully and accurately respond to Interrogatories Nos. 1, 2, 8, 9, 10, 11, 12, 14, 20, 22, 23, 24 and Requests for Production Nos. 10, 12, 13, 15, 16, 17, 21, 25, 26, 32, and 33 . . . ."  (ECF No. 37 at 1.)  The court granted Plaintiff's Motion to Compel on December 9, 2015, and ordered Defendant "to respond to Plaintiff's discovery requests addressed in its Motion to Compel (ECF No. 37) . . . ."  (ECF No. 51 at 3.)

On December 15, 2015, Defendant filed a Motion to Clarify seeking permission to either (1) charge Plaintiff a reasonable copying cost of $1.00 per page to copy and produce documentation in compliance with the court's order or (2) require "Plaintiff's counsel to come to . . . [Defendant's] headquarters in Bowling Green, Kentucky so that Plaintiff can inspect and copy the documents that are desired by Plaintiff."  (ECF No. 52 at 2.)  On January 8, 2016, Defendant electronically transmitted Supplemental Answers to Plaintiff's First Set of Interrogatories (ECF No. 62-5) and "provided Plaintiff with the username and password for an internet server where Plaintiff could download 96 gigabytes of purportedly responsive data— well over 19,737 documents—and a table of contents identifying 50 categories of documents within the production set."  (ECF No. 62 at 3–4.)  On January 25, 2016, the court denied Defendant's Motion to Clarify and ordered it to "produce all documentation required by the December 9, 2015 Order (ECF No. 51) granting Plaintiff's Motion to Compel (ECF No. 37)

3

within fourteen (14) days . . . ."

After Defendant failed to address any further deficiencies in its production of documents as identified by Plaintiff (see ECF No. 62-6), Plaintiff filed the instant Motion for Rule to Show Cause on March 16, 2016.  (ECF No. 62.)  Defendant filed a Response to Plaintiff's Motion for Rule to Show Cause on April 4, 2016, to which Plaintiff filed Reply to Defendant's Response to Plaintiff's Motion for Rule to Show Cause on April 14, 2016.  (ECF Nos. 63, 64.)

## II.     JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to Plaintiff's allegation that the Complaint "is so related to the In Re Receiver case and the underlying criminal case, United States v. Wilson, et al[,]" cases in which the court has jurisdiction, "that it forms part of the underlying case or controversy."  (ECF No. 1 at 1 ¶ 2.)  The court may properly hear Plaintiff's state law claims for violation of South Carolina's Securities Laws and contract rescission based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

## III.    LEGAL STANDARD

Fed. R. Civ. P. 37 ("Rule 37") permits the district court to enter orders compelling discovery and to impose an array of sanctions for the failure to comply with such orders.  Fed. R. Civ. P. 37(b)(2)(A).  Rule 37(b)(2)(A) governs the appropriate sanctions for failure to obey a discovery order, stating in pertinent part: "If a party . . . fails to obey an order to provide or permit discovery . . . the court . . . may issue further just orders . . . [including] . . . dismissing the action or proceeding in whole or in part; rendering a default judgment against the disobedient party; or treating as contempt of court the failure to obey any order . . . ."  Fed. R. Civ. P.

4

37(b)(2)(A).  "In exercising its discretion to select sanctions appropriate to the particular violation, however, the district court should consider four factors: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions."  McKenna v. Sovran Bank NA, 836 F.2d 546, 1987 WL 30159, at *3 (4th Cir. 1987) (citations omitted).  "A district court must consider all of these factors; however, no one factor is dispositive."  Elmore v. City of Greenwood, C/A No. 3:13-cv-01755-TLW-KDW, 2015 WL 3868068, at *7 (D.S.C. June 23, 2015) (quoting Cox v. Deal, No. CIV. 2:09-CV-2715, 2011 WL 3418397, at *5 (D.S.C. Aug. 3, 2011)).

"In general, the drastic sanctions of dismissal and default are appropriate only where the noncomplying party's conduct represents such flagrant bad faith and callous disregard for his obligations under the Rules that the sanctions are warranted not merely to prevent prejudice to his current adversary, but also to deter those who might be tempted, in the future, to engage in similar misconduct."  McKenna, 1987 WL 30159, at *3 (citation omitted).  "Nevertheless, in considering what sanctions are appropriate, the court must focus on determining a sanction that fits the case at hand, considering the potential harm to the party seeking discovery and the conduct of the non-producing party."  Taylor v. Specialty Mktg., Inc., No. 91-3053, 1993 WL 21080, at *2 (4th Cir. Feb. 2, 1993)

## IV.     ANALYSIS

A.     The Parties' Respective Positions

In its Motion for Rule to Show Cause, Plaintiff asserts that Defendant has failed to provide complete discovery responses after 2 orders from the court and has further "attempted to

evade basic discovery requests with a 'document dump' of 400,000 pages." (ECF No. 62 at 4.) After pointing out specific examples of the deficiencies in Defendant's production (id. at 5–10), Plaintiff posits that "[n]umerous interrogatories have been blatantly ignored or insufficiently addressed . . . . Scores of documents are missing or destroyed . . . . The documents that have been provided are essentially useless to Plaintiff in the unwieldy manner delivered." (Id. at 10–11.) As a result, Plaintiff asks the court to consider all available sanctions against Defendant on the basis that Plaintiff has suffered "substantial prejudice not only as a result of the delay and expense in recovering responsive information, but also as a result of the information that has apparently been destroyed by Defendant during the pendency of these discovery efforts." (Id. at 11.)

In Response to Plaintiff's Motion, Defendant simply asserts that "it is patently unfair for it to be criticized for responding to the request for production when it had previously cautioned Plaintiff that there would be hundreds of thousands of documents and that it was Allied's belief that most of those documents would be irrelevant to the case at hand." (ECF No. 63 at 3–4 (citing ECF No. 62-6 at 2).) In this regard, Defendant believes that it has acted in accordance with the court's December 9, 2015 Order (ECF No. 51).

B.     The Court's Review

Under Fed. R. Civ. P. 34, a party producing documents is required to produce them "as they are kept in the usual course of business or must organize and label them to correspond with the categories in the request; . . . ." Fed. R. Civ. P. 34(b)(2)(E)(i). "While the party producing 'cannot attempt to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents,' the plain language of Rule 34 makes clear that 'a responding party has no duty to organize and label the documents if it has produced them as they

6

are kept in the usual course of business.'" Williams v. Taser Int'l, Inc., C/A No. 1:06-CV-0051-RWS, 2006 WL 1835437, at *7 (N.D. Ga. June 30, 2006) (citations omitted).  However, if a party elects to produce documents "as they are kept in the usual course of business," the producing party "bear[s] the burden of showing that the documents were in fact produced in that manner."  Id. (citation omitted).

    Upon review, the court observes that it is unable to find bad faith on Defendant's part since it did not outright fail to provide discovery.  However, Defendant's Response does establish that it did not produce documents to Plaintiff "as they are kept in the usual course of business."  Specifically, Defendant stated that "[t]he method of production . . . was exactly how the SEC[2] in its inquiry requested the documents and was exactly how they were provided by Allied."  (ECF No. 63 at 3.)  Even though the SEC allegedly did not have a problem with the method of production (id.), Plaintiff has persuaded the court that the production was so disorganized and "overly generous"[3] as to prevent Plaintiff from making a meaningful review of the documents.  See, e.g., Wagner v. Dryvit Sys., Inc., 208 F.R.D. 606, 610-11 (D. Neb. 2001) ("[P]roducing large amount of documents in no apparent order does not comply with a party's obligation under Rule 34"); Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 2002, Cook Cnty., Ill. v. Admiral Heating & Ventilating, Inc., 104 F.R.D. 23, 36 n.20 (N.D. Ill. 1984) ("[T]he burden to a stranger of rummaging through what may be massive job files to find the 'smoking gun,' . . . justifies placing the burden on the discovered rather than the discovering

---

[2] The United States Securities and Exchange Commission generally strives to protect investors; maintain fair, orderly, and efficient markets; and facilitate capital formation."  SEC, http://www.sec.gov/about.shtml (last visited May 17, 2016).

[3] In Williams, the court observed that if it determined that "Taser had been 'overly generous' in identifying responsive documents so as to unduly burden Plaintiffs in their search of those documents, the Court would similarly require Taser to organize and label documents as responsive to Plaintiffs' requests."  Williams, 2006 WL 1835437, at *7.  This court finds persuasive the conclusion of the Williams court.

party."); Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976) ("The defendant may not excuse itself from compliance with Rule 34 . . . by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of the documents an excessively burdensome and costly expedition."). Therefore, after consideration of the foregoing, the court orders Defendant to (1) submit to Plaintiff second supplemental responses to First Set of Requests to Produce Nos. 10, 12, 13, 15, 16, 17, 21, 25, 26, 32, and 33 that specifically identify the documents and/or electronic files that are responsive to each of these document requests and (2) organize and label documents and/or electronic files to correspond to the categories in Plaintiff's First Set of Requests to Produce. The court further orders Defendant to complete this second supplemental production on or before June 10, 2016. If Defendant fails to comply with the requirements of this Order, the court will address any subsequent motion by Plaintiff to consider all available and appropriate sanctions under Fed. R. Civ. P. 37.

## V.   CONCLUSION

Upon careful consideration of the parties' arguments and for the reasons set forth above, the court hereby **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Rule to Show Cause for Sanctions. (ECF No. 62.) Defendant shall complete the second supplemental production to Plaintiff's First Set of Requests to Produce required by this Order on or before June 10, 2016.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

May 18, 2016
Columbia, South Carolina